UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**GARY CALLIES**                                                                                    **PLAINTIFF**

**v.**                                 **3:16-CV-00201-JLH-JTR**

**SGT. MILOW;**
**RONNIE COLEMAN;**
**MANDY CHILDRESS**                                                     **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition (ARecommendation@) has been sent to United States Chief District Judge J. Leon Holmes. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

### I.   Introduction

Plaintiff Gary Callies (ACallies@), proceeding *pro se*, contends that while detained in the Crittenden County Detention Center ("CCDC"),¹ he was denied constitutionally adequate medical care for injury to his left eye.² (*Doc. 19*). Callies has sued: (1) Sgt. Milow, a Sergeant at the CCDC ("Sgt. Milow"); (2) Ronnie Coleman, the jail administrator ("Administrator Coleman"); and (3) Mandy Childress, a nurse hired by Crittenden County to provide medical services to detainees ("Nurse Childress"). All Defendants are sued in their individual capacities.³ Callies seeks compensatory damages for a permanent eye injury.⁴

---

¹ The Eighth Circuit applies the *same* deliberate indifference standard to inadequate medical care claims brought by pretrial detainees, under the Fourteenth Amendment, and convicted prisoners, under the Eighth Amendment. *Ryan v. Armstrong*, 850 F.3d 419, 424-25 & n.3 (8th Cir. 2017); *but see Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2472-73 (2015) (rejecting analysis of a defendant's subjective state of mind in pretrial detainee's excessive force case and holding that the appropriate standard is "solely an objective one"); *Ingram v. Cole County*, 846 F.3d 282, 286 (8th Cir. 2017) (holding that, under *Kingsley,* an "objective unreasonableness" standard should be applied to conditions of confinement cases brought by pretrial detainees under the Fourteenth Amendment), *vacated and reh'g en banc granted* (8th Cir. Apr. 17, 2017), *argued en banc* (8th Cir. Oct. 17, 2017). Accordingly, Callies's "custodial status" is not relevant to the evaluation of his inadequate medical care claims.

² In responding to Defendants' Motion for Summary Judgment, Callies alleges for the first time that he was "denied access to [his] blood pressure medication although [he] presented a copy of the prescription." (Doc. 42 at ¶ 16). This "new" inadequate medical care claim is not properly before the Court and will not be considered in this action.

³ The Court previously dismissed Callies's official capacity claims. *See Docs. 20 and 21*.

⁴ Callies also requests expungement of all charges against him and reinstatement of his

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts. (*Docs. 36-38; 48*). Callies has filed a Response in opposition. (*Doc. 42*).

Before addressing the merits of Defendants' Motion, the Court will summarize the relevant undisputed facts giving rise to Callies's claims.[5]

1. At all times relevant to Callies's claims, Administrator Coleman and Sgt. Milow were not medical professionals, and did not have any specific medical training to assist them in evaluating Callies's medical complaints. Similarly, neither of them provided non-emergency medical treatment to CCDC detainees. (*Doc. 38-1 at ¶ 8*).

2. Nurse Childress's nursing duties included evaluating and treating detention center detainees for medical issues. (*Doc. 38-3 at ¶ 2*).

3. In July and August of 2016, the relevant time period, the CCDC's policies and practices required prisoners and pre-trial detainees to submit written

---

drivers' license. This relief is not available for the alleged violation of his constitutional right to adequate medical care.

[5] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

requests for medical treatment and file written complaints if they were dissatisfied with their medical care. All written medical requests were submitted by CCDC jail staff to the CCDC medical staff for review, response and action. The written medical request would then be filed in the "jail file" of the prisoner or pretrial detainee. (*Doc. 38-1 at ¶ 6*).

4. Callies entered the CCDC or about May 17, 2016, and remained there through August 28, 2016. On July 22, 2016, he was working as a "Trustee" at a West Memphis park. While using a weed-eater, he struck a hill of fire ants, which "were flung all over" him. This caused him to knock his safety googles off. The still-running weed-eater then threw a rock that hit Callies in his left eye. (*Doc. 19 at 6; Doc. 42 at ¶¶ 5-8*).

5. When he returned from his work assignment, Callies informed Sgt. Milow of his eye injury and the ant bites. Sgt. Milow provided ointment for the fire ant bites but did not provide any medical treatment for Callies' eye injury. (*Doc. 42 at p. 3*).

6. On July 27, 2016, five days after the alleged eye injury occurred, Callies submitted a medical request form to Nurse Childress which stated the following:

> *We spoke briefly on this yesterday. I am experiencing trouble with a lot of pressure in my left eye that hurts and can not see out of it. I need glasses to see [. . .] but a [pair] of reading glasses will do! Thank you!*

(Def.'s Exh. A-1, *Doc. 38-2 at 9*).

7. Later on July 27, 2016, another CCDC employee, who is not named in this action, wrote the following on the bottom of Callies' request for medical attention:

> *Ptn states he was having pain in eye for extended period.   Appt [with] Dr. Bryant 8-2-16.   Ptn denies specific injury to eye.*

(Def.'s Exh. A-1, *Doc. 38-2 at 9*; Affidavit of M. Childress, *Doc. 38-3 at ¶ 3*).

8. On August 2, 2016, Callies was examined by Dr. G. Edward Bryant, an ophthalmologist in West Memphis, Arkansas.   Dr. Bryant wrote the following in his office note of the visit:

> *Can't see out of OS [left eye][6]  since 1990 – hammer hit eye – punctured optic nerve – feels like pressure.*

As a result of the office visit, Dr. Bryant ordered reading glasses for Callies. (*Doc. 38 at ¶¶ 6-7*; Medical Records, *Doc. 38-4 at 4*; *Doc. 38-2 at 11*).

9. On August 2, 2016, Nurse Childress signed a Medication Order for the reading glasses prescribed by Dr. Bryant.   (Affidavit of M. Childress, *Doc. 38-3 at 2*).

10. On August 5, 2016, Callies submitted a grievance which stated the following:

> *"Immediate response requested"*
> *I have been denied every right of my due process of law for medical treatment.   I'm asking to be released.   My left eye is damaged.   The*

---

[6] OS is the abbreviation for "oculus sinister," which is Latin for "left eye."   *See* https://medical-dictionary.thefreedictionary.com/oculus+sinister (accessed on June 4, 2018).

> *script for meds is in my pocket.   They won't fill it and . . .*

(*Doc. 38-2 at 12*).

11.   On August 8, 2016, Nurse Childress responded to Callies' grievance submitted three days earlier:

> *I/M informed we have already sent to Dr. Bryant & he has been blind in that eye for 20 years – I/M informed Rx we received was for reading glasses as there is [no] tx for this – Reading glasses have been ordered – Medical care has not been denied in any way –*

(Affidavit of M. Childress, *Doc. 38-3 at ¶ 5*).

12.   On August 28, 2016, Callies was released from the CCDC.   (*Doc. 38 at p. 1*).

13.   On September 20, 2016, Callies filled a prescription for Latanoprost[7] eye drops written by Dr. Bryant.   (*Doc. 34 at p. 2*).

## II.   Discussion

Defendants argue that they are entitled to summary judgment on all claims Callies has asserted against them.   The Court agrees.

To proceed to trial on his inadequate medical care claims, Callies must have evidence demonstrating that:   (1) he had an objectively serious need for medical

---

[7] Latanaprost is used to treat high pressure inside the eye due to glaucoma or other eye diseases (*e.g.*, ocular hypertension).   *See* http://webmd.com/drugs/2/drug-13699/xalatan-ophthalmic/details.   Although the record is not well developed on this point, the Court gives Callies the benefit of the doubt and assumes Dr. Bryant wrote this prescription on August 2, 2016. It is unclear why Callies waited almost a month after his release from the CCDC before he filled the prescription.

care to treat his eye injury; and (2) one or more of the Defendants subjectively knew of, but deliberately disregarded, that serious medical need by delaying his medical treatment. *See Saylor v. Nebraska,* 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Finally, because Callies claims that Defendants *delayed* his medical treatment, he must provide evidence to demonstrate he was harmed by the alleged delay in treatment. *Jackson v. Riebold*, 815 F.3d 1114, 1120-21 (8th Cir. 2016); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment on a delay in medical care claim, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same). Thus, Callies must show Defendants were aware of but ignored a critical or escalating medical situation, or that the delay adversely affected his medical prognosis.

1.   **Objectively Serious Medical Need**

A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment, or was so obvious that a layperson would recognize the need for a physician's attention."  *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010);  *McRaven v. Sanders,* 577 F.3d 974, 982 (8th Cir. 2009) (same).  While determining whether a medical need is objectively serious is a factual issue, summary judgment remains appropriate if, based upon the undisputed facts, no reasonable jury could find that the prisoner suffered from an objectively serious medical need.  *Jones v. Minnesota Dept. of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Callies claims the injury to his left eye was caused, on July 22, 2016, when the weed-eater threw a rock which struck him there.  This contention is not supported by any medical evidence in the record.  To the contrary, when Callies requested medical treatment for his eye on July 27, 2016, he complained of feeling "pressure" in his left eye and requested "reading" glasses.  He did *not* mention anything about an injury to his eye from a foreign object.  In addition, the staff member who interviewed him noted that he *specifically denied* any injury to his eye. (*Doc. 38-2 at p. 9*).

On the same day Callies requested medical attention for his left eye, the CCDC made an appointment for him to see an ophthalmologist.  Five days later,

8

CCDC officials took Callies to see Dr. Bryant, an ophthalmologist. Nothing in the medical record from that visit suggests that Dr. Bryant observed or treated an injury to Callies's left eye caused by a rock. Instead, Dr. Bryant wrote in his treatment notes that *Callies had not been able to see out of his left eye since 1990, when a "hammer hit eye [and] punctured optic nerve."* Dr. Bryant prescribed reading glasses and Latanoprost, an eye drop designed to reduce eye pressure.

Callies's claim that he suffered a traumatic injury to his left eye on July 22, 2016, while he was working outside the CCDC as a trustee, is in *direct conflict* with: (1) him waiting until July 27, 2016 to submit a written request for medical treatment which failed to mention *anything* about a rock or other foreign object causing traumatic injury to his left eye; and (2) his admission to Dr. Bryant that he injured his left eye, *in 1990*, when he was struck with a hammer, which badly damaged or severed the optic nerve. Callies's bare allegation that he asked for "the urgent care needed," (*Doc. 19 at p. 5*), but was denied medical treatment is contrary to *all* of the medical evidence, and not supported by *any facts* in the record. In Callies's first written complaint for medical treatment, he only mentions feeling "pressure" in his left eye and the need for "reading glasses." When he saw Dr. Bryant five days later, Callies apparently explained the damage to his left eye was caused by a hammer and occurred 25 years earlier.

In short, the *only* evidence that Callies suffered an injury to his left eye on

July 22, 2016, are his own factually and medically unsupported allegations. Callies's bare assertions of suffering a traumatic eye injury, on July 22, 2016, are in direct conflict with *everything* in the record, and are not sufficient to establish that he suffered from a "serious medical need." *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *see also Beyerbach v. Sears*, 49 F.3d 1324, 1326–27 (no showing of objective seriousness without medical evidence that a delay in treatment produced harm). Finally, even if Callies was deemed to have a "serious medical need" related to the "pressure" he felt in his left eye, that need was addressed on a timely basis when he was taken to see Dr. Bryant only five days after he filed a written request for medical attention.

Callies has failed to present any plausible evidence sufficient to create a submissible jury question on the issue of whether, on July 22nd, he sustained an injury to his left eye that rose to the level of a "serious medical need."

### 2. Subjective Deliberate Indifference

Similarly, Callies has failed to produce any evidence demonstrating that any of the three Defendants were deliberately indifferent to his alleged need for medical treatment for the alleged traumatic injury to his left eye. To the contrary, it is undisputed that: (1) although Callies claims he was injured on July 22, 2016, he waited until July 27, 2016 to complete a written request for medical treatment;[8] (2)

---

[8] In his Affidavit submitted in opposition to summary judgment, Callies makes the vague

10

in his July 27th medical request, Callies only complained of feeling "pressure" in his left eye and the need for reading glasses, but made *no mention* of any traumatic injury to his left eye caused by a rock striking him;   (3)   on July 27, 2016, the same day Callies submitted a written request for medical attention, CCDC officials made an appointment for him to see Dr. Bryant, a board certified ophthalmologist;[9]   (4) on August 2, 2016, Callies saw Dr. Bryant, who did not report seeing any signs of a traumatic injury to Callies's left eye, but who did prescribe reading glasses and Latanoprost for the problems with "eye pressure" and "vision" that Callies complained about;   and   (5)   Dr. Bryant's office visit notes indicate that Callies said he has been unable to see much out of his left eye since 1990, due to a hammer puncturing his optic nerve, which caused him to feel "pressure" in that eye.[10]

Suffice it to say, nothing in the record supports Callies's claim that any of the

---

assertion that he is "presently uncertain" how the Defendants or their agents "permitted the omission, exclusion, or deletion of [his] reporting of the injury to [his] left eye." *Doc. 42 at p. 4*. It is telling that, on July 27, 2016, when Callies finally did submit a written complaint of a *non-traumatic problem* with his left eye, he mentioned nothing about his allegedly earlier reporting of a traumatic eye injury that had been "omitted," "excluded," or "deleted."   Callies's suggestion that he may have reported the injury sooner than July 27th, without any specifics, is insufficient to create a dispute on a *material* issue of fact.   At the summary judgment stage, Callies must present *admissible evidence* sufficient to permit a jury finding in his favor.

[9]   Dr. Bryant's website indicates that he is diplomate in the American Board of Ophthalmology.   See http://westmemphiseyecenter.apps-1and1.com/about-dr-bryant.

[10]   Callies denies this.   He claims he was able to see with my left eye when he entered the CCDC and lost vision in his eye as a result of the rock striking him in the eye.   His claims are utterly at odds with everything in the medical record and the statements he made to Dr. Bryant on August 2nd.

Defendants were "deliberately indifferent" to his complaints about the problems with his left eye.[11] Dr. Bryant saw Callies on August 2nd and gave him a prescription for eye drops to reduce the pressure he felt in his left eye and a prescription for reading glasses. This constituted prompt medical treatment rendered in response to a written request to see a doctor that Callies submitted on July 27th. Callies has come forward with no evidence to support his allegation that the Defendants were responsible for a "delay" in him receiving medical care, must less evidence that he somehow was harmed by the alleged delay in him receiving that treatment, which involved Dr. Bryant writing prescriptions for reading glasses and eye drops. *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment on a delay in medical care claim, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same).

### III.  Conclusion

Callies has not produced any evidence, other than his own self-serving and factually unsupported allegations, that he suffered a serious medical need related to being hit in the eye with a rock on July 22, 2016. Likewise, he has not produced

---

[11] Callies's contention that "three weeks passed before [his] eye was examined" by Dr. Bryant simply is not true. Callies did not make a written request for medical attention for his eye until July 27th and he was seen by Dr. Bryant on August 2nd. (*Doc. 42 at p. 3*).

any evidence to prove his claim that Defendants Administrator Coleman, Sgt. Milow, or Nurse Childress were subjectively aware of, but deliberately disregarded, a serious medical need, or that they were responsible for the alleged delay in him receiving medical treatment for his left eye.

IT IS THEREFORE RECOMMENDED THAT: Defendants' Motion for Summary Judgment *(Doc. 36)* be GRANTED, and Callies's inadequate medical care claims against them be DISMISSED, WITH PREJUDICE. It is further recommended that the Court certify that an *in forma pauperis* appeal of the denial of his claims would not be taken in good faith.

Dated this 12th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE